◻ ORIGINAL

No. _____
(Judge _____)

FILED

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MAR 1 1 2014

(BID PROTEST)

U.S. COURT OF
FEDERAL CLAIMS

■14 - 202C

RUSH CONSTRUCTION, INC.,

Plaintiff,

v.

THE UNITED STATES OF AMERICA,

Defendant.

---

# COMPLAINT
## POST-AWARD BID PROTEST OF
## SOLICITATION NO. W912EP-13-B-0007

---

James E. Krause
James E. Krause, P.A.
219 N. Newnan Street, Fourth Floor
Jacksonville, Florida 32202
jimkrause@krauselaw.net
(904) 353-5533  Telephone
(904) 353-5853  Facsimile
Counsel for RUSH Construction, Inc.

March 11, 2014

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

PARTIES ...................................................................................................... 2

JURISDICTION ........................................................................................... 2

STANDING ................................................................................................... 2

QUESTIONS PRESENTED........................................................................... 3

SUMMARY OF PROTEST .......................................................................... 4

BACKGROUND OF PROTEST.................................................................... 6

BASIS OF PROTEST.................................................................................... 8

    The Agency's actions procurement decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." The GAO's decision and recommendations were irrational and erroneous as a matter of law.................................... 8

    C&D'S Files a Protest at the GAO ................................................................. 14

    RUSH Protests the Agency's Determination to Adhere to the GAO's Recommendations........................................................................................ 16

    No Material Defect ....................................................................................... 19

    C&D's Second & Third Protest Issues ........................................................... 21

LEGAL ....................................................................................................... 22

    Minor Informality or Irregularities in Bids........................................................ 24

    Clerical Error ............................................................................................... 26

    Standard Of Review...................................................................................... 28

    Standing And Prejudice ................................................................................ 29

CONCLUSION............................................................................................ 31

RELIEF REQUESTED.................................................................................. 32

## TABLE OF CONTENTS

### EXHIBITS TO BID PROTEST

**Exhibit**　　**Title / Description**　　　　　　　　　　　　　**Appendix Page**

A.　　Agency Notice of Determination to Accept GAO
　　　Recommendations dated 28 February 2014..................................................1

B.　　Bid Schedule Pages from Amendment #0005 .............................................2

C.　　Original Submission of Bid Schedule by RUSH ..........................................4

D.　　Corrected Submission of Bid Schedule by RUSH........................................6

E.　　Original Option "A" Bid Schedule with Errors Highlighted .......................9

F.　　Original Option "A" Bid Schedule with Correct Items Highlighted .........10

G.　　GAO Decision Dated 14 February 2014.....................................................11

H.　　C&D Construction, Inc.'s Reply to Agency Report at GAO......................17

I.　　Questions from GAO dated 29 January 2014 .............................................20

J.　　Original SF 1442 Showing Acceptance of Five Amendments ..................21

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Fed'n of Gov't Employees v. United States,*
    258 F.3d 1294 (Fed. Cir. 2001)..................................................................................2, 30

*Bannum, Inc. v. United States,*
    404 F.3d 1346 (Fed. Cir. 2005)........................................................................................31

*BCPeabody Constr. Servs. v. United States,*
    112 Fed. Cl. 502,
    2013 U.S. Claims LEXIS 1393 (Fed. Cl. 2013) .........................................................27, 28

*Burroughs Corp. v. United States,*
    617 F.2d 590 (Ct.Cl.1980) ...............................................................................................29

*Centech v. United Staets*
    554 F.3d 1029, 2009 U.S. App. LEXIS 1867 (Fed. Cir. 2009) ...................................26, 29

*Control Line, Inc.,*
    89-2 CPD P 313 ...............................................................................................................23

*Custom Envtl. Serv., Inc.,*
    B-234774, May 24, 1989, 89-1 CPD ¶ 501 .....................................................................24

*Elec. On-Ramp v. United States,*
    104 Fed. Cl. 151,
    2012 U.S. Claims LEXIS 316, 2012 WL 1072306 (Fed. Cl. 2012) ..................................26

*Firth Constr. Co. v. United States,*
    36 Fed. Cl. 268,
    1996 U.S. Claims LEXIS 129, 41 Cont. Cas. Fed. (CCH) P76,970..................................23

*Giberson Plumbing & Excavating, Inc.,*
    B-245798, Dec. 27, 1991, 91-2 CPD ¶ 589 .....................................................................24

*Griffy's Landscape Maintenance LLC v. United States,*
    46 Fed. Cl. 257 (Fed. Cl. 2000) .......................................................................................28

*Grunley Walsh Int'l, LLC v. United States,*
    78 Fed. Cl. 35 (2007) .......................................................................................................29

*HP Enter. Services, LLC v. United States,*
  11-888 C, 2012 WL 1131584 (Fed. Cl. Apr. 5, 2012)....................................................3, 31

*Impresa Construzioni Geom. Domenico Garufi v. United States,*
  238 F.3d 1324 (Fed. Cir. 2001)....................................................................................28, 29

*Info. Tech. & Applications Corp. v. United States,*
  316 F.3d 1312 (Fed. Cir. 2003)........................................................................................31

*Johnny F. Smith Truck and Dragline Services, Inc.,*
  93-1 CPD P 427 ...............................................................................................................23

*JRW Enterprises, Inc.,*
  93-1 CPD P 111 ...............................................................................................................23

*KAES Enterprises, LLC,*
  B-408366, Aug. 7, 2013....................................................................................................22

*Knowledge Connections Travel, Inc. v. United States,*
  76 Fed. Cl. 6,
  2007 U.S. Claims LEXIS 102 (Fed. Cl. 2007) .................................................................25

*Leslie & Elliott Co.,*
  B-216676, Feb. 19, 1985, 85-1 CPD ¶ 212.................................................................. 24-25

*Linc Gov't Services, LLC v. United States,*
  96 Fed. Cl. 672 (Fed. Cl. 2010) .......................................................................................31

*Linc Gov't Servs. v. United States,*
  108 Fed. Cl. 473,
  2012 U.S. Claims LEXIS 1679 (Fed. Cl. 2012) ...............................................................25

*ManTech Telecomm. & Inf. Sys. v. United States,*
  49 Fed. Cl. 57 (2001) .......................................................................................................28

*M.W. Kellogg Co./Siciliana Appalti Costruzioni v. United States,*
  10 Cl. Ct. 17 (1986) .........................................................................................................25

*Nilson Van & Storage, Inc. v. United States,*
  99 Fed. Cl. 408,
  2011 U.S. Claims LEXIS 1710 (Fed. Cl. 2011) ...............................................................26

*Prestex Inc., v. United States,*
  162 Ct. Cl. 620, 320 F.2d 367 (1963) ..............................................................................23

*Rex Serv. Corp. v. United States*,
    448 F.3d 1305 (Fed. Cir. 2006)..................................................................................3, 31

*Seaboard Elecs. Co.*,
    B-237352, 90-1 CPD P 115 ..........................................................................................23

*SP Sys. v. United States*,
    86 Fed. Cl. 1, 2009 U.S. Claims LEXIS 42 (Fed. Cl. 2009)...........................................29

*TECOM, Inc.*,
    B-236929.2, May 11, 1990, 90-1 CPD ¶ 463 ..................................................................24

*Tel-Instrument Elecs. Corp. v. United States*,
    56 Fed. Cl. 174 (2003), *aff'd*,
    87 Fed. Appx. 752 (Fed. Cir. 2004)...............................................................................26

*W.B. Construction and Sons, Inc.*,
    B-405818; B-405818.2, January 4, 2012 ........................................................................25

*Weber Constr.*,
    89-1 CPD P 309 ............................................................................................................23

*Weeks Marine, Inc. v. United States*,
    575 F.3d 1352 (Fed. Cir. 2009)................................................................................2, 30

## STATUTES

5 U.S.C. § 706(2)(A)...........................................................................................................28

28 U.S.C. § 1491(b)..............................................................................................................2

28 U.S.C. § 1491(b)(1) .........................................................................................................2

28 U.S.C. § 1491(b)(4) .......................................................................................................28

## REGULATIONS

4 C.F.R. § 21.0(a)...........................................................................................................2, 30

48 C.F.R. § 14.405 ...................................................................................................... *passim*

48 C.F.R. § 14.405(c)(1).....................................................................................................25

FAR § 14.301......................................................................................................................26

FAR § 14.405 ............................................................................................................. *passim*

FAR § 14.405(d)(2) ....................................................................................................................23

FAR § 14.407-1 ..........................................................................................................................27

FAR § 14.407-2(a)-(b) ...............................................................................................................27

FAR § 14.407-3(g)-(g)(1) ..........................................................................................................27

FAR § 33.101 .........................................................................................................................2, 30

FAR § 52.217-5 ..........................................................................................................................21

FAR § 52.219-14 ........................................................................................................................21

## **OTHER AUTHORITY**

John Cibinic, Jr., Ralph C. Nash, Jr., & Christopher R. Yukins, *Formation of Government Contracts* 649 (4th ed. 2011) ...............................................................................................27, 28

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

RUSH CONSTRUCTION, INC.
       Plaintiff,

v.                                 No. _____

THE UNITED STATES,
       Defendant

**COMPLAINT
POST-AWARD BID PROTEST OF
SOLICITATION NO. W912EP-13-B-0007**

RUSH CONSTRUCTION, INC., a Florida corporation (hereinafter "RUSH"), the Plaintiff, by and through its undersigned counsel, hereby sues the UNITED STATES, DEPARTMENT OF THE ARMY, CORPS OF ENGINEERS-JACKSONVILLE DISTRICT, the Defendant, and for its cause of action against the Defendant alleges:

This is a protest of notice to award of by the U.S. Army Corps of Engineers following a sustained protest filed by C&D Construction, Inc. (hereinafter "C&D"), the second lowest bidder, based on the recommendations of the General Accountability Office ("GAO"), which resulted from award of Solicitation No. W912EP-13-B-0007 – East–West Guidewall Repairs, Canaveral Lock and Barge Canal, Canaveral Harbor, Brevard County, Florida (hereinafter "Solicitation" or "Contract"). This Solicitation was a Sealed Bid procurement (IFB) subject to Part 14 of the Federal Acquisition Regulations ("FAR") and a Small Business Set-Aside. RUSH at all times material to this action was and is an bidder on the Solicitation, and was the original awardee for the Contract.

1

**PARTIES**

1.     RUSH is an experienced Small Business that provides Federal construction contract services and experience to the United States government.

2.     The Defendant, the United States, Department of the Army, Corps of Engineers – Jacksonville District, (hereinafter "Government" or "Agency") is a Federal Agency procuring products and services for Federal projects for the United States Government.

**JURISDICTION**

3.     This action is brought under, and jurisdiction is vested in this court through, the Tucker Act, 28 U.S.C. § 1491(b)(1), Amended by the Administrative Disputes Resolution Act of 1996, Public Law Number 104-320, § 12(a), 110 Stat. 3870, 3874-75 (codified at 28 U.S.C. § 1491(b)) (hereinafter the "ADRA").

**STANDING**

4.     RUSH is an interested party whose direct economic interest would be affected by the award of a contract or by the failure to award a contract, and therefore under FAR 33.101 has a right to protest this SOLICITATION. See also 4 C.F.R. § 21.0(a).

5.     Standing arises from prejudice, which is present if the plaintiff establishes that it is an interested party with a direct economic interest in the procurement. (Citing *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) *("AFGE"))*. Bid protest standing is limited to those plaintiffs who are "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by the failure to award the contract." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (quoting *AFGE*, 258 F.3d at 1302). A protestor possessing a substantial chance of winning the contract has a direct economic interest in the procurement, and has standing before this court.

2

*Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307–08 (Fed. Cir. 2006). *HP Enter. Services, LLC v. United States*, 11-888 C, 2012 WL 1131584 (Fed. Cl. Apr. 5, 2012).

6.     RUSH was originally found to be the low bidder and was awarded this Contract. Therefore, RUSH has shown sufficient prejudice to have standing before this Court.

## QUESTIONS PRESENTED

7.     Whether the Agency's actions procurement decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."

8.     Whether the GAO's actions were irrational and erroneous as a matter of law when it decided that mere clerical errors and/or minor informalities and irregularities were material in violation of the FAR and its own line of precedent cases, and thus violated procurement law when the GAO "recommended" that the Agency terminate the contract to RUSH and award to the next lowest bidder.

9.     These questions require a review of the facts of the case sufficient to demonstrate the GAO's determination was irrational based on:

a)     The duplication error by RUSH which resulted in the mislabeling of CLINS on a standard form government bid sheet, when no error existed in the bid amounts or quantities on that same page, is merely an <u>immaterial clerical error</u> which the Agency is required to allow the contractor to correct, not a material matter that makes a bid nonresponsive; or

b)     The error in mislabeling the bid sheet regards a matter of form but not substance, thus an <u>immaterial minor informality or irregularity</u> pursuant to 48 CFR 14.405 and the Agency argued that position at the GAO, whether the Agency's action in

3

following the GAO recommendation to the contrary is arbitrary and capricious when the GAO's decision is irrational.

## SUMMARY OF PROTEST

10.     This is a protest of notice of a determination by the U.S. Army Corps of Engineers to accept and adhere to the GAO recommendations from the sustained protest filed by C&D Construction, Inc., the second lowest bidder, based on an irrational adverse decision and recommendation to the Agency by the GAO. RUSH was originally the lowest bidder and awardee on the Contract. (See Exhibit "A" for the 28 February 2014 Letter from the Agency to RUSH.)

11.     RUSH was the apparent low bidder at the bid opening and was awarded the Contract for the Solicitation.

12.     C&D, the second lowest bidder on the Solicitation, protested the award of the contract to RUSH at the GAO primarily based on an announcement at the bid opening that there were apparent errors in RUSH's bid which C&D later determined should have led the Government to reject the bid as nonresponsive. (AR Tab 19, P2)

13.     Even though the Solicitation was clear that bids would be evaluated based on the combined price of the Base Line Items and the Option "A" Items, C&D additionally stated as a second argument that C&D should have been awarded the Contract since they had the lowest Base Line Items bid when taken by itself and the award was only made on the Base Line Items. (AR Tab 19)

14.     C&D's third argument was that RUSH intended to "turn key subcontract the fender system to Orion Marine a large business enterprise" and that this violated the parameters of a small business set-aside procurement. RUSH met the small business set-aside requirements

to the Government's satisfaction. (AR Tab 13) There is no prohibition about hiring a large company as a subcontractor.

15.     The Agency reviewed C&D's grounds for protest and made the following observations:

RECOMMENDATIONS OF THE CONTRACTING OFFICER
"In summary, C&D allegations that RUSH Construction (1) did not submit on the forms furnished by the Government or on copies of those forms and their bid met the requirements of the solicitation, (2) the award was made based upon the base plus options but awarded for just the base bid dollar amount and (3) RUSH intend s to award a subcontract or enter into an agreement with the Orion Group or one of its subsidiaries to complete the construction of this solicitation and that the Orion Group or one of its subsidiaries . . . is classified as a large business are unfounded.
(AR Tab 21, P5)  Underlining added for emphasis.

16.     At the GAO protest, RUSH alleged that C&D has failed in its protest to demonstrate any violation of law or regulation on which the GAO could sustain a protest.

17.     C&D admitted that RUSH had the lowest overall bid at the GAO protest. (Tab 19, P2) Further, the documentation does not support a protest based on the grounds apparently alleged by C&D.  Specifically, the Abstract of Offers (AR Tab 7), identified as Attachment C to the Protest, shows that RUSH was the lowest bid at $5,943,977.46, and C&D was second lowest at $5,948,746.00.

18.     The Solicitation contract clause 52.217-5 Evaluation of Options, demonstrates the Government made a proper decision based on the solicitation requirements and the FAR. Therefore RUSH is the proper awardee of this procurement.

19.     The GAO sustained the protest in error, stating that RUSH had not clearly committed to perform the Option "A" work, that the bid should be rejected as non-responsive, and recommending that the Government terminate the Contract with RUSH and award to the next lowest bidder. (See Exhibit "G" for the GAO Decision.)

5

20.     The GAO eventually incorrectly decided the RUSH errors were material and not a minor informality or irregularity, or a clerical error

21.     These errors are not material based on a clear reading of regulations and procurement law.

22.     On 28 February 2014, the Government issued a letter stating that it will follow GAO recommendations. (See Exhibit "A.") The GAO recommendations include terminating the existing Contract with RUSH for convenience and awarding to the next lowest bidder. Therefore, this is an adverse agency action that RUSH is protesting.

23.     Upon information and belief, the Government has agreed to stay the implementation of the GAO's recommendations pending this Court's decision. If the Government were to terminate the Contract with RUSH prior to this Court's decision, RUSH will seek an injunction to stop the award of the Contract to the next lowest bidder pending this Court's decision.

## BACKGROUND OF PROTEST

24.     Invitation for Bids No. W912EP-13-B-0007 was issued by the U.S. Army Corps of Engineers, Jacksonville District on 01 August 2013 as a small business set-aside, with five amendments, and proposals due on 13 September 2013. (AR Tabs 1A through 6)

25.     The work is located at the Canaveral Lock and Barge Canal, Canaveral Harbor, Brevard County, Florida along the eastern coastline of Florida. The Lock and Barge Canal work area can be accessed via Port Canaveral ocean entrance, Canaveral Barge Canal from the Intracoastal Waterway, and Interstate 95 and local connectors.   The Canaveral lock was constructed in 1951 with timber approach guide walls extending approximately 600 feet from both the East and West side of the monolith lock structure. The approach timber guide walls

were previously repaired in 1979, but the environmental deterioration has caused some timber piles to be in a state of failure. This makes the deteriorated portions of the approach walls unsuitable to resist the required mooring or impact loads. Project scope for the base bid is to provide the repair for the Canaveral West timber approach wall to prevent failure and restore the wall to an operational condition and the Option "A" concerned the East Approach Wall Repair. Bidders were required to bid on both the Base Line Items and the Option "A" Items.

26.     The magnitude of construction was synopsized to be between $5,000,000 and $10,000,000. (AR Tab 14, P1)  The period of performance is 266 days for the base, and 266 days for the option. (AR Tabs 1A-6)

27.     In the Solicitation, the Government provided a page of the bid schedule with CLIN numbers for the Base Line Items bid and provided a second page for the bid on Option "A" Items. The line items for both pages are identical except that: (1) the 4th digit is a "1" for the Base Line Items and the 4th digit is a "2" for the Option "A" Items; and (2) there is one additional CLIN on the Base Line Items page. (See Exhibit "B" for the Government provided 2-page Bid Schedule as amended in Amendment No. 0005.)

28.     RUSH acknowledged all amendments and timely responded to the Solicitation with a bid of $5,943,977.46 for the Base Line Items plus Option "A". (See Exhibit "C" for RUSH's original Bid Schedule as submitted and Exhibit "J" for RUSH's original SF 1442 acknowledging all five amendments.)

29.     The Bid Opening was held 13 September 2013.

30.     RUSH Construction was the apparent low bidder.

7

31.     RUSH was provided an opportunity to correct the bid schedule line item numbering in accordance with FAR 14.405. RUSH provided a corrected bid schedule, which was accepted by USACE. (See Exhibit "D" for RUSH's Corrected Bid Schedule.)

32.     Since none of the prices, quantities, quality or other material matters on the bid schedules changed when the bid was corrected, no other bidders were prejudiced.

33.     C&D first protested the award of the Contract to RUSH on 19 September 2013 to the GAO with a supplemental protest on 23 September 2013. The GAO determined the protest was premature since the Contract had not yet been awarded.

34.     Award of Contract was made on 07 November 2013 to RUSH in the amount of $2,953,995.44, since only the base amount was awarded at this time.

35.     On 11 November 2013, C&D again submitted a protest to the GAO of the Contract award to RUSH.

## BASIS OF RUSH'S PROTEST

### The Agency's actions procurement decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."

### The GAO's decision and recommendations were irrational and erroneous as a matter of law.

36.     As stated above, these questions require a review of the facts of the case for a determination of whether the GAO's determination was irrational based on:

37.     Whether a duplication error in the labeling of CLINS on a bid sheet provided by the Government, when no error existed in the bid amounts or quantities on that same page, is merely a clerical error which the Agency is required to allow the contractor to correct, or is a material matter that makes a bid nonresponsive.

38.     When the error in bid regards a matter of form but not substance, and the Contracting Officer has previously made a decision that the error is a minor informality or irregularity pursuant to 48 C.F.R. § 14.405 and the Agency argued that position at the GAO, whether the Agency's action in following the GAO recommendation to the contrary is arbitrary and capricious when the GAO's decision is irrational.

39.     RUSH acknowledged all amendments and timely responded to the Solicitation with a bid of $5,943,977.46 for the Base Line Items plus Option "A".

40.     During the Bid Opening the Government noticed that the second page of the 2-page bid schedule from RUSH had the wrong line item numbering. The first page contained the bid for the Base Line Items, while the second page contained the bid for Option "A" and a grand total of the bid for the Base Line Items plus the Option "A" Items. (See Exhibit "B" for the Bid Schedule pages from Amendment No. 0005.)

41.     The wrong line item numbering on page 2 was determined by the Agency to be an error by RUSH in duplicating the Government standard bid form. RUSH had retyped the form into an Excel spreadsheet on a computer to avoid computation errors, but in the process due to a clerical error, created labeling errors on the second page for Option "A." Fortunately the labeling errors did not affect pricing, quantity or quality or any other material matter.

42.     In the Solicitation, the Agency provided a standard form page for bidders to use with CLIN numbers for the Base Line Items bid and provided a second standard form page for the bid on Option "A" Items. The line items for both pages are identical except that the 4th digit is a "1" for the Base Line Items and the 4th digit is a "2" for the Option "A" Items and the Base Items page has one additional line item. The final form provided came from Amendment 5, and that was the form that was used. (See Exhibit "B.")

43.     After typing the first page for the Base Line Items, RUSH duplicated the first page as a basis for the 2nd page. Then RUSH added the subtotal and grand total labels at the bottom of the form of page 2 to match the original Option "A" page and removed the extra line item, without noticing some of the other differences, including the CLIN number differences of one digit. (To correct the Option "A" Line Items on the bid form merely involved replacing the number "1" with the number "2" in each CLIN, without changing any prices, quantities or quality.) (See Exhibit "C" for the Bid Schedule as originally submitted by RUSH.)

44.     In addition to the CLIN number error, the subtitle near the top of the page was duplicated in error from the first page, so that both pages had the subtitle of "Base Line Items:" and "West Approach Wall Repair", when the 2nd page should have had the subtitle of "Option 'A' Items:" and "East Approach Wall Repair."  (See Exhibit "E" for RUSH's original Option "A" bid schedule submission with the errors highlighted.)

45.     However, the most important labeling on the page was correct. RUSH included, at the bottom of the second page of the bid schedule for Option "A," the correct labels, including the subtotal for Option "A" which was "OPTION 'A' (LINE ITEMS 0002 THRU 0002AN)" and for the grand total which was "TOTAL BASE PLUS OPTION 'A' (LINE ITEMS 0001 THRU 0002AN).

46.     The Government personnel at the bid opening had no problem determining that this page was a bid for Option "A" given this labeling. (See Exhibit "F" for RUSH's original Option "A" bid schedule submission with the correct information highlighted.)

47.     ALL dollar amounts, quantities and quality were correct in the original bid, and no dollar amount changes or other material changes were made in the corrected bid.  Only some

of the labels on page 2 of the bid schedule forms were changed in the corrected bid. (See Exhibit "F" for the Original Option "A" Bid Schedule with the correct items highlighted.)

48.     The Contract Specialist and a Contracting Officer (the "CO") opened the bids on 13 September 2013 and immediately noticed that RUSH's bid had a different numbering sequence for the CLINs than was provided in the Solicitation. The Contracting Officer stepped out of the opening and sought clarification from counsel. They determined that it was "a minor informality and/or clerical error on the bid schedule and the bid stood as read." (AR Tab 21, P4) The CO documented her decision that the error was a minor informality or a clerical error on 17 September 2013 in a Memorandum for the Record. (AR Tab 9) (See Exhibit "E" for the original Option "A" Bid Schedule with the errors highlighted. See Exhibit "F" for the original Option "A" Bid Schedule with the correct sections highlighted.)

49.     In determining a minor informality or irregularity, the Government relies on FAR 14.405, which specifies:

> 48 C.F.R. § 14.405 – Minor Informalities or Irregularities in Bids.
> A minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some <u>immaterial</u> defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders. The defect or variation is immaterial when the effect on price, quantity, quality, or delivery is negligible when contrasted with the total cost or scope of the supplies or services being acquired. The contracting officer either shall give the bidder an opportunity to cure any deficiency resulting from a minor informality or irregularity in a bid or waive the deficiency, whichever is to the advantage of the Government. (Underlining added for emphasis added)

50.     Pursuant to FAR 14.405, RUSH's error was an immaterial defect or variation, merely a matter of form and not of substance. RUSH was the low bidder, and this error had no effect on price, quantity, quality, or delivery.  Therefor there is no prejudice on the other bidders.

51.     There was no confusion at the bid opening on the part of the Contract Specialist or by the Contracting Officer as to whether the second page of the pricing was for Option "A". The bid amounts on the second page were different than the bid amounts on the first page, and the bottom of the form was correct for the Option "A" second page, including a second line for the grand total of the first and second pages. In addition, the second page correctly had one less CLIN than the first page. They immediately saw that there was a labeling problem; that the labeling error did not affect the price for Option "A"; and they sought the opinion of counsel to support their opinion that it was an immaterial error.

52.     RUSH was the apparent low bidder; the Bid opening personnel announced that it was "a minor informality and/or clerical error on the bid schedule and the bid stood as read." (AR Tab 21, P4)

53.     RUSH was provided an opportunity to correct the bid schedule line item numbering in accordance with FAR 14.405. RUSH provided a corrected bid schedule, which was accepted by the Agency. (See Exhibit "D" for the corrected Bid Schedule submitted by RUSH.)

54.     Since none of the prices, quantities, quality or any other material matter on the bid pages changed when the bid was corrected, no other bidders were prejudiced.

55.     Award of contract was made on 07 November 2013 to RUSH in the amount of $2,953,995.44, since only the base amount was awarded at that time – not Option "A".

56.     On 11 November 2013, C&D filed another protest with the GAO. The grounds for C&D's protest were not completely clear but appeared to be as follows:

> (i)     "That "RUSH Construction did not use the bid forms provided in the solicitation."
> (AR Tab 21, P4)

(ii)    That "The award was made based upon the base plus options but awarded for just the base bid dollar amount which C&D Construction had the low number and seen on the attached Abstract C."
(AR Tab 21, P5)

(iii)    That "RUSH Construction intends to award a subcontract or enter into an agreement with the Orion Group or one of its subsidiaries to complete the construction of this solicitation and that the Orion Group is classified as a large business concern according to data collected off the internet. "
(AR Tab 21, P5)

57.    The Solicitation as amended contained the following clauses that are pertinent to the protestor's complaints:

A)    Per clause 52.214-19 Contract Award–Sealed Bidding–Construction (AUG 1996):

(a)    "The Government will evaluate bids in response to this solicitation without discussions and will award a contract to the responsible bidder whose bid, conforming to the solicitation, will be most advantageous to the Government, considering only price and the price-related factors specified elsewhere in the solicitation.
(b)    The Government may reject any and all bids, and waive informalities or minor irregularities in bids received."
(AR Tab 1A, P12-13)

B.    Per clause 52.217-5 Evaluation of Options (JUL 1990):

"Except when it is determined in accordance with FAR 17.206(b) not to be in the Government's best interests, the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. Evaluation of options will not obligate the Government to exercise the option(s)."
(AR Tab 1A, P13)

C.    Per clause 52.219-14 Limitations on Subcontracting (DEC 2005) (CESAJ Adaptation):

"By submission of an offer and execution of a contract, the Offeror/Contractor agrees that in performance of the contract in the case of a contract for"–

"(3) General Construction. The concern will perform at least 15 percent of the cost of the contract, not including the cost of materials, with its own employees."

. . .

(AR Tab 5, P34-35)

## C&D's Protest at the GAO

58.     C&D was the second lowest bidder on the Solicitation by a narrow margin. (AR Tab 7)

59.     C&D was present at the bid opening and heard the staff make initial comments about RUSH's bid having some errors. (AR Tab 21, P4)

60.     On 19 September 2013, and again on 23 September 2013, C&D filed a protest with the GAO. (AR Tab 17)

61.     The GAO decided that the protest was premature since RUSH had not yet been awarded the Contract and dismissed it. (AR Tab 12)

62.     On 11 November 2013, after RUSH had been awarded the Contract, C&D filed another protest with the GAO. (AR Tab 19)

63.     The grounds for C&D's protest were not completely clear but appeared to be as follows:

> (i)     "That "RUSH Construction did not use the bid forms provided in the solicitation."
> (AR Tab 21, P4)

> (ii)     That "The award was made based upon the base plus options but awarded for just the base bid dollar amount which C&D Construction had the low number and seen on the attached Abstract C."
> (AR Tab 21, P5)

> (iii)     That "RUSH Construction intends to award a subcontract or enter into an agreement with the Orion Group or one of its subsidiaries to complete the construction of this solicitation and that the Orion Group is classified as a large business concern according to data collected off the internet. "
> (AR Tab 21, P5)

14

64.     RUSH entered an appearance as the Intervenor.

65.     The more reasonable of C&D's three grounds at the GAO was the concern about the bid forms RUSH submitted. While RUSH was permitted to duplicate the forms, it was in that process that errors were made. C&D suggested that RUSH had not sufficiently shown in its bid that it was bidding on Option "A" due to the mislabeling that occurred. C&D argued that RUSH's errors made the bid non-responsive, and as such should have been rejected.

66.     In C&D's subsequent 20 December 2013 Reply to the Agency Report, C&D enlarged its concerns stating that "Note #6 on line item 0002AH East Fender Installation of Option "A" was WAS NOT acknowledged by RUSH Construction's bid." (See Exhibit "H", C&D's Reply.)

67.     C&D's second issue in the protest was that C&D had the lowest bid on the Base Line Items portion of the bid, and since only the Base Line Items were awarded, the Contract should have been awarded to C&D.

68.     C&D's third issue was that RUSH planned to use a large business as a subcontractor on the Project, which C&D apparently felt was a violation of some regulation on the small business set-aside.

69.     The GAO decided that RUSH's bid was nonresponsive due to the errors on the bid schedule for Option "A" and that these errors were not mere informalities. The GAO sustained the protest. (See Exhibit "G.")

70.     The GAO recommended that the Agency "revoke the wavier of the discrepancies in RUSH's bid, reject RUSH's bid as nonresponsive, and terminate the contract for the convenience of the government. We recommend that the Cops identify the next lowest-priced responsive bidder, and make award to that firm." (See Exhibit "G", P6.)

**RUSH Protests the Agency's Determination to Adhere to the GAO's Recommendations**

71.     This is a protest of the Agency's written notice of determination to "accept and adhere to the GAO recommendations from the sustained protest" as irrational and erroneous as a matter of law. (See Exhibit "A" for the Agency's Notice.)

72.     The primary issue for this Court is whether the nonmaterial duplicating error by RUSH in retyping a Government provided form was a minor irregularity or informality, or a clerical error.   There are two additional less important issues raised by C&D that will be addressed herein at Paragraphs #91 through #99.

73.     The Solicitation was a Sealed Bid procurement (an "IFB") subject to Part 14 of the FAR.  The solicitation's work involves the demolition and subsequent replacement of certain piles, pile bracing, related electrical as well as walkway deconstruction. It also included fender installation and handrail construction. The Base Line Items concerned the West Approach Wall Repair and the Option "A" Items concerned the East Approach Wall Repair. Bidders were required to bid on both the Base Line Items and the Option "A" Items.

74.     RUSH provided the lowest bid pursuant to the terms of the solicitation, and was awarded the contract.

75.     During the Bid Opening it was discovered that one page of RUSH Construction's bid schedule had incorrect labeling, specifically wrong line item numbering. This was determined by the Agency to be an error in duplicating the Government standard bid form. RUSH retyped the first page of the Government bid form onto an Excel Worksheet. Then RUSH copied that page and made changes to it for the second page. However, due to a clerical error, not all the changes were made on the second, or Option "A" page. In particular, the CLIN numbering was not changed. This merely involved substituting the number "2" for the number

16

"1" in the CLINS, without changing any dollar amounts. In addition, the subtitle was duplicated in error from the first page. However, ALL dollar amounts were correct for the Option page, and the bottom of the page included the proper labels referencing totals for "OPTION "A" (LINE ITEMS 0002 THRU 0002AN) which referenced the proper CLINs and "TOTAL BASE PLUS OPTION "A" (LINE ITEMS 0001 THRU 0002AN). RUSH acknowledged the 5 amendments in its bid and the bid forms used referenced that they had been "Revised to Accompany Amendment #0005."

76.     The Contracting Officer at the bid opening on 13 September 2013 sought the advice of counsel about the line item numbering clerical errors who decided the error was a minor informality or clerical error at the time of bid opening.

77.     The Contracting Officer for the Solicitation documented that this was a minor informality on 17 September 2013. The CO also noted that RUSH had acknowledged all five amendments that changed the bid schedule. (AR Tab 9, P1)

78.     RUSH Construction was provided an opportunity to correct the bid schedule line item numbering in accordance with FAR § 14.405. RUSH provided a corrected bid schedule, which was accepted by the Government. (See Exhibit "D.")

79.     Since RUSH provided the correct amounts corresponding to Option "A" of the correct bid form, regardless of the title at the top or the line item numbering, the Agency understood RUSH had provided a bid for both the Base Contract and Option "A" and that this error in duplicating the Government Standard Form was a minor informality or clerical error.

80.     The Government reviewed C&D's grounds and made the following observations:

RECOMMENDATIONS OF THE CONTRACTING OFFICER

"In summary, C&D allegations that RUSH Construction (1) did not submit on the forms furnished by the Government or on copies of those forms and their bid met the requirements of the solicitation, (2) the award was made based

upon the base plus options but awarded for just the base bid dollar amount and (3) RUSH intend s to award a subcontract or enter into an agreement with the Orion Group or one of its subsidiaries to complete the construction of this solicitation and that the Orion Group is classified as a large business are unfounded. Award was made in compliance with the basis for award in the solicitation and the Federal Acquisition Regulation." (AR Tab 21, P5)

". . .[T]he mis-numbering of the bid scheduled submitted by RUSH Construction with their bid was considered a minor informality in accordance with FAR 14.405. The mistake in the bid schedule was a minor informality with an immaterial defect in the bid that was merely a matter of form and not of substance and did not affect price, quantity or quality. The award of the contract was made based upon evaluating the options in the solicitation in accordance with FAR 52.217-5, Evaluation of Options in the solicitation."
(AR Tab 21, P6) (Underlining added for emphasis)

81.     In reviewing this matter, the GAO requested a response from the Government and RUSH to two (2) questions regarding the error on the duplicated bid sheet:

    a.     "Is use of the word "West" rather than "East" a material defect in the RUSH Bid?"
    b.     "Assuming the Corps and RUSH will take the position that this issue is not material, please explain how one can conclude that RUSH's original bid made a definite offer to perform the optional east wall scope of work."
    (See Exhibit "I" for 29 January 2014 Fax from GAO with Questions.)

82.     The GAO misinterprets the materiality component of the clerical error or minor informality or irregularity.

83.     RUSH states this is not a material defect as the error was merely a matter of form and not of substance and did not affect price, quantity, or quality in accordance with FAR 14.405. It was merely a clerical error in copying a standard form provided by the Government. The Government properly determined this to be a minor informality or irregularity.

84.     RUSH's bid made a definite offer to perform the optional east wall scope of work. The prices were properly reflected on the option page for performance of Option "A", which option represented the East Wall.  The labeling at the bottom of the form was correct and specifically referenced the total for Option "A" and the grand total for the Base Line Items plus

Option "A." As noted above, the clerical error in preparing the bid was during the cut and paste from the first, or Base Bid, page of line item pricing to create the second page for Option "A".

## No Material Defect

85.    RUSH's error in inserting the word "West" instead of "East" is not a material defect. It was merely a clerical error in copying the CLIN numbers and descriptions from the corresponding lines on a standard form provided by the Government. (AR Tab 8, P2) RUSH's error in not inserting the word "East" on the spreadsheet they had cut and pasted from their Base Bid was a clerical error caused by common computer age bidding. The Corps immediately understood the clerical error, investigated, and determined it was not material. The Contracting Officer's Statement of the Facts states "quantities and all material aspects of the bid schedule was correct."

86.    RUSH's CLIN bid amounts prove that RUSH was bidding on Option "A", the East Wall, not the Base Bid West Wall, since the CLIN amounts on the spreadsheet reflect RUSH's Option "A" bids. See highlighted bid page. These individual CLIN amounts are not the same as the Base Bid West Wall spreadsheet, and also do not include a bid for Spare Piling, which was a requirement on the Base Bid West Wall. There is no reasonable alternative but to realize these numbers represented RUSH's bid for the East Wall Option "A", which was for the East Wall repair.

87.    The labeling error was only at the top of the spreadsheet. RUSH included the correct Option "A" language at the bottom of the spreadsheet that represented their Option "A" bid, with the correct total for the Option "A" work at $2,953,995.44. (See Exhibit "C" for RUSH's original bid schedule submittal.)

88.     RUSH's error was immaterial as it **did not affect the price, quantity, quality, or delivery terms of RUSH's bid.** As such, it also did not prejudice any bidder.  RUSH turned in a corrected form addressing this minor issue. (AR Tab 10, P4)  Further, the Agency has reviewed and determined this issue to be a minor informality or irregularity prior to awarding the Contract to RUSH. (AR Tab 9).   Pursuant to clause 52.214-19 Contract Award–Sealed Bidding– Construction (AUG 1996):   **(b)The Government may** . . . **waive informalities or minor irregularities in bids received."** (AR Tab 1A, P12)

89.     RUSH's bid made a definite offer to perform the optional East Wall scope of work.  The quantities and prices were properly reflected on the bid sheet for performance of the Option "A" bid including the East Wall, the amounts were not the same as the amounts on page 2, the CLIN descriptions were all correct and the labeling at the bottom of the form was unique to page 2.  The personnel who performed the bid opening were not confused about whether there was a bid on Option "A"; they only sought counsel to confirm their belief that the errors on the form were immaterial.

90.     RUSH unequivocally made a definite offer on Option "A".  The CLIN numbers for the Base line items began with 0001 while the CLIN numbers for Option "A" began with 0002. Due to the clerical error as described above, RUSH's original bid was mistakenly labeled at the top of the column as 'BASE LINE ITEMS"; however, the amounts on the standard form sheet were those for Option "A" and were not the same as the Base Line Item amounts for the CLINs, and the bottom of the page was clearly labeled as follows:

| | |
|---|---|
| OPTION "A" (LINE ITEMS 0002 THRU 0002AN) | $2,989,982.02 |
| TOTAL BASE PLUS OPTION "A" (LINE ITEMS 0001 THRU 0002AN) | $5,943,977.46 |
| 00010A-1 | Revised to Accompany Amendment #0005 |

(AR Tab 8, P2)

**C&D's Second & Third Protest Issues**

91.     C&D's second protest issue alleged that since the Contract was only awarded for the Base Line Items, and C&D alleged that it had the lowest price for the Base Line Items taken alone, therefore C&D wrongfully concluded that its offer is the "best value this Request for Proposal."

92.     The evaluation process that was included and used in this solicitation is clearly stated in FAR 52.217-5 [Tab 1A, P13]:

> i.     . . . "the Government will evaluate offers for award purposes by adding the total price for all options to the total price for the basic requirement. Evaluation of options will not obligate the Government to exercise the option(s)."

93.     C&D cannot change the basis for evaluation so it will favor C&D Construction. C&D admitted RUSH had the lowest combined bid [Tab 19, P14], and the documentation is clear that the basis for evaluation was the combined bid [Tab 1A, P13], even if the option was not exercised.

94.     C&D's third protest issue alleged that RUSH "intends to turn key subcontract the installation of the fender system to . . . a large business enterprise."[1] [Tab 13, P2]. There is no prohibition against a small business prime contractor engaging the services of the large business as a subcontractor as long as the small business prime contractor self performs "at least 15 percent of the cost of the contract, not including the cost of materials, with its own employees."

95.     Per clause 52.219-14 Limitations on Subcontracting (DEC 2005) (CESAJ Adaptation):

96.     "By submission of an offer and execution of a contract, the Offeror/Contractor agrees that in performance of the contract in the case of a contract for"–

---

[1] RUSH also notes this is an SBA matter. [Tab 23, P5]

i.   "(3)   General Construction.   **The concern will perform at least 15**

**percent of the cost of the contract, not including the cost of materials,**

**with its own employees**."

(AR Tab 5, P34-35)

97.   The GAO has previously determined that "it is the protester who bears the burden

of demonstrating that the proposal should have led the agency to conclude that the awardee did

not comply with this limitation"; *KAES Enterprises, LLC*, B-408366, Aug. 7, 2013.

98.   C&D did not provide any evidence proving their unsupported allegation.

99.   USACE determined that the successful low Bidder, RUSH, was performing at

least 15% of such contact. Again, the Protestor states no laws, regulations, or procedures that

have been violated.

## LEGAL

100.   RUSH alleges the Agency's actions procurement decision was arbitrary,

capricious, an abuse of discretion or otherwise not in accordance with law.

101.   RUSH further alleges the GAO's decision was irrational and erroneous as a

matter of law when it decided that mere clerical errors and/or minor informalities and

irregularities were material, in violation of the FAR and its own line of precedent cases, and thus

violated procurement law when the GAO "recommended" that the Agency terminate the contract

to RUSH and award to the next lowest bidder.

102.   The duplication error by RUSH which resulted in the mislabeling of CLINS on a

standard form government bid sheet, when no error existed in the bid amounts or quantities on

that same page, is merely an immaterial clerical error which the Agency is required to allow the

contractor to correct, not a material matter that makes a bid nonresponsive.  Alternatively, RUSH

22

alleges the error in mislabeling the bid sheet is merely a matter of form but not substance, thus an immaterial minor informality or irregularity pursuant to 48 C.F.R. § 14.405.

103.    This Court has determined "[t]he bid package has to obligate the bidder to perform in accordance with the material terms of the *IFB. Control Line, Inc.*, 89-2 CPD P 313; *Weber Constr.*, 89-1 CPD P 309. There are two elements to the inquiry: a clear intent to be bound, and sufficient terms so that acceptance of the offer forms a contract on the basis of the agency's IFB. See *Johnny F. Smith Truck and Dragline Services, Inc.*, 93-1 CPD P 427; *JRW Enterprises, Inc.*, 93-1 CPD P 111; *Control Line, Inc.*, 89-2 CPD P 313; *Weber Constr.*, 89-1 CPD P 309. . . . The real question here is whether the bid package contained sufficient terms so that the agency's acceptance of the bid, without more, would have formed a contract binding Dillard to the terms stated in the IFB." *Firth Constr. Co. v. United States* 36 Fed. Cl. 268, 273; 1996 U.S. Claims LEXIS 129; 41 Cont. Cas. Fed. (CCH) P76,970.

104.    "In determining what the essential requirements of a bid are, decisions of the GAO refer to the "material" provisions of the IFB. See *Seaboard Elecs. Co.*, B-237352, 90-1 CPD P 115; Control Line, Inc., B-235747, 89-2 CPD P 313. The Court of Claims defined the limit of permissible waivers as those that do not go "to the substance of the bid or work an injustice to other bidders. A substantial deviation is defined as one which affects either the price, quantity, or quality of the article offered." *Prestex Inc., v. United States*, 162 Ct. Cl. 620, 627, 320 F.2d 367, 372 (1963) (footnote omitted). The applicable regulations characterize the inquiry as whether the missing element goes to substance or mere form, FAR § 14.405, and suggest that the element of "delivery" should be included. FAR § 14.405(d)(2) (failure to acknowledge amendments)." *Id.*, 272

23

105.   As noted above, RUSH admits it made an error in preparing and submitting their bid, but asserts this is either a clerical error or a minor irregularity or informality. Under either approach, the error in duplication and subsequent use of the standard Government bid form was immaterial. All RUSH bid dollar amounts and quantities on the incorrectly labeled duplicated bid form were correct for Option "A", were easily ascertainable by the Agency at the bid opening, and were matters of form, not substance.

### Minor Informality or Irregularities in Bids

106.   On opening the bids in this matter, it was apparent to the Agency that there was a problem. The Agency immediately reviewed the documents, understood that the second page had partially incorrect labels but that it was a bid for Option "A", and determined this issue to be a minor informality or irregularity prior to awarding the Contract to RUSH. (AR Tab 9)

> 48 C.F.R. § 14.405 – Minor Informalities or Irregularities in Bids.
> A minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some <u>immaterial</u> defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders. The defect or variation is immaterial when the effect on price, quantity, quality, or delivery is negligible when contrasted with the total cost or scope of the supplies or services being acquired. The contracting officer either shall give the bidder an opportunity to cure any deficiency resulting from a minor informality or irregularity in a bid or waive the deficiency, whichever is to the advantage of the Government. (Emphasis added)

107.   The GAO has previously found, "where the omission pertains to some immaterial defect in or variation of a bid from the exact requirements of the IFB, it can be corrected or waived where it is not prejudicial to other bidders. 48 C.F.R. § 14.405. A defect or variation is immaterial if the effect on price, quantity, quality, or delivery is negligible when contrasted with the total cost or scope of the services being acquired. . . . *Giberson Plumbing & Excavating, Inc.*, B-245798, Dec. 27, 1991, 91-2 CPD ¶ 589 at 2-3; *TECOM, Inc.*, B-236929.2, May 11, 1990, 90-1 CPD ¶ 463 at 3-4; *Custom Envtl. Serv., Inc.*, supra at 3-4; *Leslie & Elliott Co.*, B-216676, Feb.

19, 1985, 85-1 CPD ¶ 212 at 3. *W.B. Construction and Sons, Inc.*, B-405818; B-405818.2, January 4, 2012.

108.    The Court of Federal Claims has stated: "48 C.F.R. § 14.405 requires that "[t]he contracting officer either . . . give the bidder an opportunity to cure any deficiency resulting from a minor informality or irregularity in a bid or waive the deficiency, whichever is to the advantage of the Government." 48 C.F.R. §14.405 (2005). Among the examples of "minor informalities or irregularities" that the regulation cites is an unsigned bid, if that bid "is accompanied by other material indicating the bidder's intention to be bound by the unsigned bid." 48 C.F.R. § 14.405(c)(1). *Knowledge Connections Travel, Inc. v. United States*, 76 Fed. Cl. 6, 2007 U.S. Claims LEXIS 102 (Fed. Cl. 2007)

109.    " [W]here a defect in a bid is trivial or a mere formality, not material, the bid is not required to be rejected out of hand."" *Id.* at 449 (quoting *M.W. Kellogg Co./Siciliana Appalti Costruzioni v. United States*, 10 Cl. Ct. 17, 26 (1986)). . ."*De minimis* errors are those that are so insignificant when considered against the solicitation as a whole that they can safely be ignored and the main purposes of the contemplated contract will not be affected if they are. . . In addition, this oversight did not deprive the Army of any information, let alone have any effect on the factors enumerated in the FAR definition of materiality. *See* FAR § 14.405 (allowing the contracting [504] officer to waive any deficiency resulting from a minor informality or irregularity)". *Linc Gov't Servs. v. United States*, 108 Fed. Cl. 473, 503, 2012 U.S. Claims LEXIS 1679 (Fed. Cl. 2012)

110.    FAR § 14.405 provides that "A *minor informality or irregularity* is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in a bid . . . that can be corrected or *waived* without being prejudicial to other bidders." (Emphasis

25

added.) . . . The provision further provides that a defect is "immaterial when the effect on price, quantity, quality, or delivery is negligible in contrast to the . . . scope of [the solicitation]." *Id.*; *see Centech*, 554 F.3d at 1038 (relying on FAR § 14.405 to find that compliance with a term of the solicitation was material because it affected cost evaluation). *Elec. On-Ramp v. U.S.*, 104 Fed. Cl. 151, 2012 U.S. Claims LEXIS 316, 2012 WL 1072306 (Fed. Cl. 2012)

111.   "Determination of whether a defect in a bid is material is committed to agency discretion." *Tel-Instrument Elecs. Corp. v. United States*, 56 Fed. Cl. 174, 177 (2003) (citing FAR §§ 14.301, 14.405), *aff'd*, 87 Fed. Appx. 752 (Fed. Cir. 2004). The contracting officer may waive or permit a party to cure minor irregularities. *See* FAR § 14.405("A minor informality or irregularity is one that is merely a matter of form and not of substance. It also pertains to some immaterial defect in a bid or variation of a bid from the exact requirements of the invitation that can be corrected or waived without being prejudicial to other bidders."). *Nilson Van & Storage, Inc. v. United States*, 99 Fed. Cl. 408, 2011 U.S. Claims LEXIS 1710 (Fed. Cl. 2011)

### Clerical Error

112.   In addition to the scrutiny provided by the government under FAR § 14.405 to determine if an error is a minor informality or irregularity, RUSH also alleges this is a clerical error, further demonstrating this issue is not material. This Court identified the requirements for determining clerical errors in a recent case, noting that Agencies have the ability, and duty, to clarify what are obviously and reasonably clerical errors.

113.   Procurement officers have authority to act regarding clerical errors in bid proposals, but that authority varies depending on the type of procurement at issue – *i.e.*, sealed bidding or negotiated procurement. Where sealed bids are concerned, the rules regarding clerical and other mistakes in offers are cast in mandatory terms. FAR Part 14 governs sealed

bidding and provides generally that "[in] cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting officer *shall* request from the bidder a verification of the bid, calling attention to the suspected mistake." FAR § 14.407-1 (emphasis added). Regarding "[a]pparent clerical mistakes," the contracting officer "shall obtain from the bidder a verification of the bid intended" and attach it to the original bid. FAR § 14.407-2(a)-(b). Respecting other mistakes disclosed before award, "[s]uspected or alleged mistakes in bids shall be processed as follows[:] . . . . The contracting officer shall immediately request the bidder to verify the bid. Action taken to verify bids must be sufficient to reasonably assure the contracting officer that the bid as confirmed is without error, or to elicit the allegation of a mistake by the bidder." FAR § 14.407-3(g)-(g)(1). *BCPeabody Constr. Servs. v. United States*, 112 Fed. Cl. 502, 508, 2013 U.S. Claims LEXIS 1393 (Fed. Cl. 2013)

114. For procurements governed by FAR Part 14, GAO has allowed use of mistake-correction techniques to enable nonresponsive bids to become responsive, applying the stricter standard to correct bids which displace otherwise low bids. As stated in John Cibinic, Jr., Ralph C. Nash, Jr., & Christopher R. Yukins, *Formation of Government Contracts* 649 (4th ed. 2011):

> Most cases involving correction of nonresponsive bids have involved invitations containing a number of bid items where bidders have incorrectly entered or omitted prices for one or more of the items. In *Slater Elec. Co.*, Comp. Gen. Dec. B-183654, 75-2 CPD ¶ 126, GAO dealt with this kind of situation, stating: "Basically, even though a bidder fails to submit a price for an item in a bid, that omission can be corrected if the bid, as submitted, indicates not only the probability of error but also the exact nature of the error and the amount intended. The rationale for this exception is that where the consistency of the pricing pattern in the bidding documents establishes both the existence of the error and the bid actually intended, to hold that the bid is nonresponsive would be to

convert what appears to be an obvious clerical error of omission to a matter of nonresponsiveness."

*Id.* (internal citations omitted).

*BCPeabody Constr. Servs. v. United States*, 112 Fed. Cl. 502, 2013 U.S. Claims LEXIS 1393 (Fed. Cl. 2013).

115.   Second, USACE had the ability, and duty, to clarify what was obviously and reasonably a clerical error.   The GAO identified this requirement in the *BCPeabody* protest when it was at the GAO, and this Court has agreed that:

> "In cases of apparent mistakes and in cases where the contracting officer has reason to believe that a mistake may have been made, the contracting officer shall request from the bidder a verification of the bid, calling attention to the suspected mistake. 48 C.F.R. § 14.406-1. The FAR makes this exception because of the great importance of one of the cornerstone policy goals underlying public procurement - insuring that the government attains the best contract possible and does not take advantage of obvious contractor errors. The FAR is not diverted from this goal by easily remedied clerical errors. . . The duty of verification exists regardless of whether the solicitation is characterized as negotiated or sealed. . ." *Griffy's Landscape Maintenance LLC v. United States*, 46 Fed. Cl. 257, 259, (Fed. Cl. 2000).

## Standard Of Review

116.   RUSH alleges the GAO's actions were irrational and erroneous as a matter of law when it decided that mere clerical errors and/or minor informalities and irregularities were material in violation of the FAR and its own line of precedent cases, and thus violated procurement law when the GAO "recommended" that USACE terminate the contract to RUSH and award to the next lowest bidder.

117.   [T]he Court must determine whether the aggrieved offerors have established that the agency's procurement decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 28 U.S.C. § 1491(b)(4); 5 U.S.C. § 706(2)(A); *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *ManTech Telecomm. & Inf. Sys. v. United States*, 49 Fed. Cl. 57, 64 (2001). The Court may set

28

aside an agency's contract award if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure." *Impresa*, 238 F.3d at 1332. *SP Sys. v. United States*, 86 Fed. Cl. 1, 36, 2009 U.S. Claims LEXIS 42.

118.    The GAO has already reviewed a protest on this matter.  However, "[t]his Court is not, of course, "bound by the views of the Comptroller General nor do they operate as a legal or judicial determination of the rights of the parties." *Burroughs Corp.*, 617 F.2d at 597.

"If the GAO's advice is rational, it is not arbitrary or capricious to follow it" but concluding GAO advice was, in fact, irrational because the "GAO draws a legal conclusion with no principled support." If the GAO recommendation is, for example, plainly contrary to a statutory requirement, that decision is irrational and an agency action is not justifiably based upon it. *Grunley Walsh Int'l, LLC v. United States*, 78 Fed. Cl. 35, 44 (2007). . . . In order to prevail under *Honeywell*, therefore, a plaintiff must show "either that the agency corrective action constituted a clear violation of applicable statutes or regulations, or that the [agency] acted arbitrarily and capriciously in following GAO's decision because GAO's decision was itself irrational." *Centech*, 79 Fed. Cl. at 574.  *SP Sys. v. United States*, 86 Fed. Cl. 1, 36, 2009 U.S. Claims LEXIS 42.

## Standing And Prejudice

119.    This Solicitation was a Sealed Bid procurement (IFB) subject to Part 14 of the FAR and a Small Business Set-Aside.

120.    RUSH provided the lowest bid pursuant to the terms of the solicitation, and was awarded the contract.

121.   An error on the standard government bid form was identified at the bid opening. The Agency reviewed and determined that RUSH's error was immaterial and therefore a minor informality or irregularity pursuant to FAR § 14.405.

122.   C&D filed a protest at the GAO.  The Government and RUSH argued that this was immaterial, and a minor informality or irregularity, or a clerical error. The GAO determined that the Agency's determination was incorrect and has recommended the Agency to re-award.

123.   The Agency issued a notice of its determination to accept and adhere to the GAO recommendations from the sustained protest filed by C&D Construction, Inc., and to thereby terminate the award to RUSH.

124.   RUSH is an interested party whose direct economic interest would be affected by the award of a contract or by the failure to award a contract, and therefore under FAR § 33.101 has a right to protest this SOLICITATION. See also 4 C.F.R. § 21.0(a).

125.   RUSH was originally found to be the low bidder and was awarded this Contract. Therefore, RUSH has shown sufficient prejudice to have standing before this Court.

126.   The court first examines whether the plaintiff in a bid protest has standing to bring the suit. *ITAC*, 316 F.3d at 1319. Standing arises from prejudice, which is present if the plaintiff establishes that it is an interested party with a direct economic interest in the procurement. *Id.* (citing *Am. Fed'n of Gov't Employees v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) (*AFGE*)). Bid protest standing is limited to those plaintiffs who are "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by the failure to award the contract." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1359 (Fed. Cir. 2009) (quoting *AFGE*, 258 F.3d at 1302). A protestor possessing a substantial chance of winning the contract has a direct economic interest in the procurement, and has

standing before this court. *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307–08 (Fed. Cir. 2006) (citations omitted). *HP Enter. Services, LLC v. United States*, 11-888 C, 2012 WL 1131584 (Fed. Cl. Apr. 5, 2012).

127. Second, the Federal Circuit has held that the court must conduct a second prejudice inquiry, one to which the court's determination on the merits is a prerequisite, in order to "assess[ ] whether an adjudged violation of law warrants setting aside a contract award." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1357 (Fed. Cir. 2005). To satisfy this second prejudice inquiry, a plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the errors" that the court determines the agency made. *Linc Gov't Services, LLC v. United States*, 96 Fed. Cl. 672, 693-96 (Fed. Cl. 2010).

128. Because RUSH was the low bidder, it has demonstrated that it was within the zone of competition for the CONTRACT, and has shown that it would have a realistic chance of receiving the CONTRACT award if successful on the merits of this bid protest. For this reason, RUSH is an interested party with standing to pursue its claim against USACE, and this Court has jurisdiction to decide RUSH's bid protest under the ADRA. RUSH has been prejudiced by the USACE's action to wit: "there was a substantial chance that would have received the contract award but for the alleged error in the procurement process" *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003).

## CONCLUSION

129. RUSH acknowledges that the Contract has not been terminated with RUSH; however, RUSH accepts and protests as adverse Agency action the Agency's written determination to abide by the GAO's decision and recommendations.

130.    The duplication error by RUSH which resulted in the mislabeling of CLINS on a standard form government bid sheet, when no error existed in the bid amounts or quantities on that same page, is merely an immaterial clerical error which the Agency is required to allow the contractor to correct, not a material matter that makes a bid nonresponsive.  Alternatively, RUSH alleges the error in mislabeling the bid sheet is merely a matter of form but not substance, thus an immaterial minor informality or irregularity pursuant to 48 C.F.R. § 14.405.

131.    This error by RUSH in bid was a matter of form but not substance, and the Contracting Officer has previously made a decision that the error was a minor informality or irregularity pursuant to 48 C.F.R. § 14.405 and the Agency argued that position at the GAO. The Agency's action in following the GAO recommendation to the contrary is arbitrary and capricious when the GAO's decision is irrational.

132.    The GAO's actions were irrational and erroneous as a matter of law when it decided that mere clerical errors and/or minor informalities and irregularities were material in violation of the FAR and its own line of precedent cases, and thus violated procurement law when the GAO "recommended" that USACE terminate the contract to RUSH and award to the next lowest bidder.

## RELIEF REQUESTED

WHEREFORE RUSH, if the Contract remains held by RUSH at the time of the Court's ruling, respectfully requests that this Court:

1.    Provide a ruling on its protest that the Agency's determination to award the Contract to C&D is arbitrary and capricious and contrary to law;

2.    Provide a ruling that the GAO's decision was irrational and erroneous as a matter of law;

3.      Direct the Clerk to enter judgment enjoining the Agency from awarding the

Contract under Solicitation W912EP-13-B-0007 to C&D Construction, Inc.; and

4.      Any other monetary and injunctive relief the Court determines is appropriate.


March 11, 2014                           Respectfully submitted,


                                         _____
                                         James E. Krause
                                         James E. Krause, P.A.
                                         219 N. Newnan Street, Fourth Floor
                                         Jacksonville, Florida 32202
                                         jimkrause@krauselaw.net
                                         (904) 353-5533  Telephone
                                         (904) 353-5853  Facsimile
                                         Counsel for RUSH Construction, Inc.